DETERMINED IN THE

# FIRST DEPARTMENT

AT

## GENERAL TERM,

### March, 1893.

---

HENRY G. NEWHALL, Plaintiff, *v.* CHRISTOPHER A. WYATT, Defendant.

In the Matter of the Claim of JAMES R. CLARK, Appellant, *v.* C. A. WYATT & COMPANY.
THOMAS S. RYAN, Receiver, Respondent.

68   1
139a 452

*Liability of a new firm for the debts of a former firm — obligation of a special partner — burden of proof as to the receipt of assets — illegal payment out of moneys of the new firm — reference — allowance of claims.*

Where an individual who, while doing business in a firm name, has received goods on consignment for sale on commission, subsequently forms, as general partner, a limited partnership with another person as special partner, under the same firm name, and thereafter renders, without the knowledge of the special partner, a fictitious account to the consignor of the goods, by which account goods which had been consigned to the old firm and for which he was individually indebted, are falsely represented as having come into the possession of the new firm, the new firm is not thereby rendered liable for the goods not consigned to it or on its credit, and which never came into its possession.

An obligation, on the part of one who entered, as special partner, a firm formed to carry on a business previously conducted by the general partner individually in a firm name, to pay debts of the old firm, is not to be inferred from the fact that the business continued to be conducted as formerly, under the same firm name, and that the old firm's books were used by the new firm, and the old accounts were brought forward, where the books and the statements of assets therein were falsified by the general partner for the purpose of concealing his misappropriations, and such falsifications and misappropriations were not discovered owing to the short continuance of the existence of the new firm.

In order to charge such new firm, upon the theory that it has received money or assets of the old firm, the burden is upon the person seeking to so charge it to show that such assets came into the hands of the new firm, as it is not to be presumed that the latter took and retained moneys of the old firm, in the absence of an agreement showing its right so to do.

Drafts drawn in favor of third parties by a consignor of goods, and accepted by the general partner prior to the formation of the new firm, and thereafter illegally paid by a bank out of moneys of the new firm, without the knowledge of the special partner and without such obligation having been recognized or assumed by the new firm, are, on a reference to pass upon claims against the new firm presented to a receiver appointed in a proceeding for its dissolution, properly applied in reduction of the indebtedness of the new firm to such consignor.

In a proceeding before a referee appointed to determine the validity of claims against a partnership, which have been presented to a receiver, appointed in an action brought for the dissolution of the partnership, neither the referee nor the General Term is authorized to allow a claimant an amount larger than his claim as originally presented and referred.

APPEAL by James R. Clark, claimant, from an order of the Supreme Court, made at the New York Special Term, and entered in the office of the clerk of the city and county of New York on the 18th day of April, 1892, confirming the report of the referee appointed to pass upon the validity of certain disputed claims presented to the receiver of the firm of C. A. Wyatt & Co., and overruling the exceptions to such report filed on the part of the claimant.

*James Byrne*, for the appellant.

*L. Laflin Kellogg*, for the respondent.

O'BRIEN, J.:

The plaintiff, claiming to be a special partner in the firm of C. A. Wyatt & Co., brought an action against the only general partner, Christopher A. Wyatt, for the dissolution of the partnership, an accounting, receivership and for a distribution. In such action the receiver, after his appointment, having advertised for claims, and that of James R. Clark, the appellant here, having been presented, an order was made referring it to a referee to hear and determine as to the validity of such claim.

Upon such reference it was made to appear that in November, 1887, an agreement was made between the claimant Clark and one C. A. Wyatt, doing business as C. A. Wyatt & Co., under which Clark was to send from his mills, woolens to be sold by Wyatt, who

was to be paid seven per cent commissions and expenses. On November 1, 1888, Wyatt, as shown by the certificate of the formation of limited partnership, took in the plaintiff as a special partner, the firm continuing under the same style of C. A. Wyatt & Co. No proof was offered of any agreement by the new firm to be responsible for the debts or obligations of the old firm; but the claimant insisted that the fact that the old books were used by the new firm, and the course of dealing during the few months of the new firm's existence, were sufficient to create an obligation on the new firm to pay the debts of the old one. And, in this connection, great stress was placed upon the fact that during the first month of the new firm's existence, in November, 1888, a statement of account was rendered, purporting to be an account of the new firm with the claimant, in which the assumption of the liability of the old firm is recognized; and upon this the claimant relies as being an account stated between the parties and conclusive as to the indebtedness of the new firm to him upon the date of such account. The correctness of this contention will be considered when we take up the several claims made by appellant.

The appellant's first claim which was disallowed by the referee is, that the new firm should be charged with the full value of the goods shipped to the old firm, but admitted by the account rendered November twenty-fifth to have come into the possession of the new firm; and, upon the theory that this was an account stated and binding upon the new firm, that this liability arose regardless of the fact as to whether the goods themselves came into the new firm or not.

We think that in this argument the appellant overlooks the distinction between a general and a special partner, their duties and their responsibilities, and gives undue weight to a statement made by Wyatt, though it purports to have been made by the new firm. Because, upon the facts here appearing, it being conceded that this was a fictitious and fraudulent account made up by Wyatt for the purpose of deceiving the claimant Clark, after he had appropriated and converted to his own use most of the latter's property, it would be a harsh rule of law that would hold, under such circumstances, that a special partner who had no knowledge of the rendering of any such account should be held responsible to the same extent as though it were made in good faith or was true, and

as though the firm had received the assets of the old firm as stated in such account.  Moreover, it must be remembered that the indebtedness for any goods consigned to the old firm was the individual indebtedness of C. A. Wyatt, who alone constituted the former firm of C. A. Wyatt & Co.; and there is no rule of law to which we have been referred which goes to the extent of holding that one partner by his declaration, even during the existence of the partnership, can change what on the face of the transaction appears to be his individual debt into a debt against the firm.

In the absence of proof, therefore, of any agreement to pay the debts of the old firm, we do not think that the claimant is entitled to any greater credit than the referee allowed, namely, $500, which, as shown, was the value of all the goods belonging to the old firm that came into the possession of the new.  And with respect to the claim for other goods assigned to the old firm, we think the referee was right in disallowing it, because these goods were not consigned to the new firm, or on the credit of the new firm, and never came into its possession.

Appellant's further contention that the firm is liable for the debts of the old firm, upon the ground that it appears conclusively from the course of business, and from the evidence generally, that the new firm promised to assume the obligations of the old one, we think was also properly disposed of by the referee.  It is true that the business was conducted by the new firm precisely as it was conducted by the old, and that the same books were used by both, that the account with the claimant in the old ledger was transferred to a new one called the " special ledger," and the balance claimed was brought forward in the new ledger and carried on with new debits and credits.  It should be borne in mind, however, when it is sought to charge the plaintiff with the course of dealing, that the evidence shows that the books themselves and the statement of assets therein contained were fictitious and fraudulent; and that the failure to discover the falsity of such statement, or the taking of the firm assets for his own use by Wyatt, is in part explained by the short duration of the partnership, which, formed in November, 1888, was in the hands of a receiver in February, 1889, a period of less than four months, and the further fact that plaintiff was a special and not a general partner.

In the case of *Hannigan* v. *Allen* (127 N. Y. 639), referred to by appellant, the facts were very different from those in the case at bar, as shown by the very quotation from the opinion of the court, for, as therein said : " The goods having been transferred to the firm, and the firm having assumed and agreed to pay the balance of the purchase-price unpaid, the agreement of the firm will be deemed to have been made for the benefit of the creditors holding such claims, and an action may be maintained by such a creditor against the firm upon such agreement."

The cases more like in principle are those of *Serviss* v. *McDonnell* (107 N. Y. 260) and *Wheat* v. *Rice* (97 id. 296), which go to the extent of holding (head-note, *Serviss* v. *McDonnell*), that an incoming partner can only be made liable by agreement for the prior debts of the firm, whether he succeeds an outgoing partner by purchase, or whether, upon the death of one partner, he joins with the survivor in carrying on the business ; that an undertaking on his part alone, or in connection with others, that the new firm will pay the debts of the old firm, can be enforced only by the old firm ; its creditors may not sue for a breach of it. As further shown by the *dictum* in that case : " As the plaintiff's contract was with the members of the old firm, in the absence of evidence that there had been a change of credit or a promise on plaintiff's part to accept the incoming members as his debtors, or some analagous act, no recovery could be had against them ; (that) the obligation of the contract did not inure to plaintiff's benefit."

There is no evidence here of any express agreement or undertaking on the part of the plaintiff to pay the debts of the old firm. Neither do we think the evidence sufficient to justify the conclusion that from the course of dealing, considering the short life of the firm, an obligation to pay such indebtedness by plaintiff will be inferred or presumed.

Another claim made by appellant is, that it was error on the part of the referee not to allow the value of certain goods which were sold before November 1, 1888, and which, by the terms of credit, were to be paid for after such date. The solution of this must necessarily depend upon the question as to which of the parties held the burden of proof. If, in order to charge the new firm with liability

for such goods sold prior to the formation of the new firm, it was necessary for claimant to show that the money representing the goods was paid into the new firm, then the referee was correct, because there was no evidence to support this burden. It is true there was some evidence given by one of the salesmen, that if there was any firm not paying their bills he would have heard of it from the office and would go and collect such bills; that such were his personal customers. This testimony, however, is not of much greater value than would be a guess at the probability in favor of appellant's theory that the new firm collected this indebtedness, and it can hardly be dignified or regarded as evidence tending to support or establish as a matter of fact that the new firm collected these moneys, and if the burden was upon the appellant, it not having been supported, the referee was justified in not allowing it.

On the other hand, if the receiver of the new firm was bound to show, to prevent a credit being given to the claimant, that the firm never received these moneys, then, there being no evidence offered to sustain this position of the receiver, it should have been allowed.

We think that the rule laid down by the referee was the correct one, that in order to charge the new firm, upon the theory that it had received money or assets of the old firm, it was necessary for the claimant to show that such assets or money came into the hands of the new firm. Because it will not be presumed that the new firm took and retained moneys of the old firm, in the absence of an agreement showing its right so to do.

The third claim is that the referee should not have charged Clark, or credited the new firm, with the amount of acceptances given by the old firm to Conway, Gordon & Garner. These drafts were drawn by the claimant in favor of the parties named, and were accepted by Wyatt prior to the formation of the new firm. Appellant claims that the evidence did not justify the finding of the referee that these drafts were paid by the new firm. We think, however, that the circumstance, as testified to by the teller of the bank, that they were paid out of the firm account of Wyatt & Co., and subsequent to the formation of this new firm, is sufficient to make out a *prima facie* case in favor of the view that these drafts were paid with moneys of the new firm, and that, in the absence of proof to the contrary, the finding upon the evidence was justified.

But assuming the drafts to have been paid with the moneys of the new firm, appellant further insists that no credit should have been given in adjusting accounts between them, to the receiver, and that the remedy, if any, of the latter would be against those who received the money on the drafts.

That no injustice was done in allowing a credit for such amount to the receiver, instead of asserting the latter's right to maintain an action, either against the claimant Clark, or the bankers to whom the drafts were made payable, and who received the money thereon, will be shown by a brief consideration of this point.

Assuming, as we must from the evidence, that without the knowledge of the special partner, Wyatt took the money of the new firm to pay the drafts of the old firm — which as shown was his individual indebtedness — and these debts or the right to pay such drafts out of the assets of the new firm never having been recognized or assumed, by agreement or otherwise, by the new firm, so far as the evidence discloses, the appropriation of the moneys of the new firm to the payment of such drafts was illegal and unauthorized. It was shown that at the time of the payment both the new and the old firm were indebted to the claimant. And while the receiver might have had his action to recover in full against Clark, the more liberal rule applied by the referee of allowing the drafts so paid to be applied upon the indebtedness of the new firm is the one most favorable to the claimant. (*Geery* v. *Cockroft*, 33 Super. Ct. 146.) Admittedly, Clark, the creditor, got the benefit of these drafts; and when we remember that the question was as to what was due him from the new firm, upon it appearing that, for his benefit, one of the partners had, without authority and illegally, applied the assets of such firm, it was but just that the amount of Clark's claim should be offset by the credit which thus arose in favor of the receiver representing the other creditors.

This brings us to the last ground, which consists of a claim which does not seem to have been specially brought to the notice of the referee, but is now urged upon this appeal. It appears that, for goods shipped subsequent to November first, consisting of certain cheviots, the value was fixed in the claim presented to the receiver at $13,983.68. It would appear, however, from the evidence, that the actual market value of these goods was $15,531.50, the differ-

enee between these two amounts consisting of the commission of seven per cent and expenses, which was allowed to Wyatt & Co. by Clark, and which was deducted in presenting the claim as to the amount of goods for which Wyatt & Co. should give Clark credit.

. The referee held that no deduction should be made for commissions or expenses, etc., for services rendered or expenses incurred since November 1, 1888. It will be seen that upon these goods the commission and expenses were allowed. The case, however, contains the evidence as to the value of the goods, showing that they were worth the difference between the amount of this item, as inserted in Clark's claim presented to the receiver, and the amount shown to have been the true market price. In addition, the referee was requested by Clark to find " that the value of this cloth was $15,531.79, exclusive of expenses and commissions," which was refused, and an exception taken.

The principle which supports the referee's refusal to allow the difference is obvious. It could not be done without increasing this item $1,548.11, thus increasing the claim originally presented and referred. This the referee had no power to do, without some amendment having been made in the claim as originally presented. (*Eldred* v. *Eames*, 115 N. Y. 401.)

The case of *Canaday* v. *Stiger* (35 Super. Ct. 432; affirmed, 55 N. Y. 456) is seeming authority for the view that the appellate court can increase the judgment where, upon undisputed evidence, such increase is proper. That, however, was in an action at law, and not a special proceeding, and the appellate court did not increase the amount of the judgment so as to make it exceed the claim made by the complaint. We are, therefore, as powerless as was the referee to allow for an amount greater than the claim as originally presented and referred.

We think that the referee was right in his conclusions, and that the judgment should be affirmed, with costs.

VAN BRUNT, P. J., and FOLLETT, J., concurred.

Judgment affirmed, with costs.