The opinion of the court was delivered by
Valentine, J.:
This was an action brought by Forbes Holton, J. P. Jones, John W. Knox and W. S. Foltz, partners, .doing business under the firm-name and style of the Croton Glass Works,, limited, against W. C. McPike and J. C. Fox, partners, doing business under the firm-name and *289 style of McPike & Fox. The case was tried in the court below before the court and a jury, and the jury found a general verdict in favor of the plaintiffs and against the defendants for the sum of $716.04; and further found, that a sufficient tender of that amount had been made by the defendants to the plaintiffs. No other findings were made in the case. Upon these findings of the jury the court below rendered judgment in favor of the plaintiffs and against the defendants for the sum of $716.04, and also'rendered judgment in favor of the defendants and against the plaintiffs for costs.
The plaintiffs bring the ease to this court on petition in error, and say in their brief, among other things, that the “plaintiffs contend that the judgment under the evidence should have been in their favor for the sum of $1,028.23 and costs; and they bring the case here for review on a case-made, which contains all the evidence offered and received in the court below, asking this court to so modify the judgment of the court below as to give plaintiffs judgment for $1,028.23 and costs, instead of $716.04 and costs.”
And again, they say in their brief that, “judgment should be modified, and the district court directed to enter judgment for plaintiffs for the sum of $1,028.23, and interest from the 5th day of May, 1881, at 7 per cent, per annum, and costs.”
1. Supreme court; practice. Of course we cannot modify the judgment of the district court, as asked by the .plaintiffs. Of course we cannot direct the district court to render judgment for$l,028.23 upon the evidence alone, without any finding of any court or jury or referee authorizing the same, and in fact against the verdict of the jury and the decision of the court below; and we do not think that it is necessary to enter into any prolonged discussion giving the reasons why we cannot do so.
The plaintiffs also claim that the verdict of the jury is against the evidence, and that the court below erred in refusing to grant them a new trial. We shall proceed to consider this question.
*290 statementof facts. It appears from the pleadings and evidence, that in February, 1879, Forbes Holton, one of the plaintiffs, was amanufacturer of glass at New Castle, Pennsylvania, and MePike & Fox, the defendants, were wholesale druggists and dealers in glass, at Atchison, Kansas. On February 14, 1879, the defendants wrote to Holton for quotations on three cars of window glass, to be shipped to them as directed in their letter. To this letter Holton replied, on February 25, 1879, as-follows:
“Window-Glass Works,
New Castle, Pa., Feb. 25, 1879.

“MoPike & Fox, Atchison, : quote you for three cars w. glass, the average each car to be same as car shipped you Dec. 4, 1878: 75,10 and 10 percent. F.O.B. here for single, and 2J per cent, additional discount for double strength. Cash in fifteen days; freight to Chicago guaranteed you at 15-|- cents per 100 weight. Draft,on invoice as before. Prices cannot remain as low as I quote you, so I prefer not to make you a proposition for over three cars. A substantial advance in ash within a few days points unmistakably to a much firmer market next month. Please advise by early mail your wishes. Yours truly,
Forbes Holton.”
On March 2, 1879, MePike & Fox, by letter of that date, accepted Holton’s proposition as follows:
“March 2, 1879.
“Forbes Holton, Neio Castle, Pa.: We will accept your recent proposition, with this amendment: You to ship one (the first) car when you get it ready for shipment; one in ten days thereafter, and the last (3d) in ten days after the .second. Will send memorandum of one or two cars within 48 hours, and the other soon thereafter. In the meantime will expect your answer. Yours, MoPike & Fox.”
On March 7, 1879, Holton, .in answer to this letter of MePike & Fox’s, writes to them as follows:
“ Window-Glass Works,
New Castle, Pa., March 7, 1879.

“Messrs. MePike & Fox, Atchison, Kansas — Gentlemen: Your favor 2d at hand. I accept your proposal for three cars window, average to be same each car as shipment of Dec. 4, Í878, one car to be shipped you every ten days after first car is sent forward. Dis. 75,10 and 10 single, and *291 2-J addition dis. for double strength, F. O. B. here, draft to be made on you at 15 days from date of shipment, and freight guaranteed you to be not over 15J cents per 100 weight to Chicago. Very truly yours,
(My letter, Feb. 25, 1879.) Forbes Holton.”
These letters constituted the contract between Holton and the defendants. The first two cars of glass were shipped and received and paid for in accordance with the contract; but the third car contracted for has never been shipped or received, unless the car for which this suit was brought (which was shipped and received in January, 1880) shall be considered such third car. Many other letters passed, between Holton and the defendants during the year 1879, the defendants all the time urging Holton to send them the third car of glass, and Holton continually promising them to do so and giving them fair excuses for not doing so, but not shipping the glass prior to January, 1880, among which letters are the following: ;
“New Castle, Pa., November 3, 1879.
“Messrs. McPike & Fox, Atchison, Kansas: I am now well up on back orders, and will reach yours during the next week or ten days. If advised by wire, I will ship you promptly on reaching your sizes, at 70 and 2J in 15 days — 5 per cent, additional for double strength — free on board cars here, with draft. The general advance in all kinds of material, and the general refusal of brokers to ship ash under old contracts, have resulted in a compromise. I have been compelled to thus write you, and will cancel your order if not hearing from you when sizes are reached to ship.
“Yours truly, Forbes Holton.”
To this letter McPike & Fox replied by telegram, as follows:
“Atchison, Kansas, Nov. 8, 1879.
“Forbes Holton, New Castle, Pa.: Letter received. Ship car of glass first possible moment. McPike & Fox.”
On November 11, 1879, Holton again wrote defendants, as follows:
“New Castle, Pa., Nov. 11, 1879.
“McPike & Fox, Atchison, Kansas — Gentlemen: In accordance with your telegram, will ship the car-load of glass at 70 and 2J cash in 15 days, and 5 per cent, additional on D. S., F. O. B., current list. The glass will go forward in ten days. Yours truly, Forbes Holton.”
*292 On November 12,1879, and one day after the above letter • was written, and evidently before McPike & Fox received it, they wrote to Holton, as follows:
“Atchison, Kansas, November 12, 1879.
“Forbes Holton, New Castle, Pa.: Will not change sizes. ■Ship as per memorandum of March 12. Please obtain us best rate of freight. Rates from Pittsburgh via Chicago are 50 cents. Yours, McPike & Fox.”
On December 30, 1879, Holton wrote a letter to McPike & Fox, as follows:
, “New Castle, Pa., Dec. 30,1879.
“McPiJce & Fox, Atchison, Kansas — Gentlemen : I will ship you to-morrow the car of glass, sizes for which have been here for some time. I regret it has not been in my power to ship you earlier; now only coming up with my old contracts. In order to pull up I started up the old Croton Glass Works, operated by me during the past year, and will ship the car from these works. Within next few days I will have every old contract wiped out, and will be in situation to ship you promptly if in want of further glass, now having 18 pots in operation. I trust the long delay will not prove detrimental, as glass comes in to you cheap; (discount now 60 per cent, in Pittsburgh.) I trust to hear from you for your further supply.
Very truly yours, Fokbes Holton.”
Sometime in January, 1880, prior to-the 15th, McPike & Fox received the following letter from John W. Knox, treasurer of the Croton Glass Works, New Castle, Pa., to wit:
“New Castle, Pa., January 3, 1880.
“McPiJce & Fox, Atchison, Kansas — Gentlemen: We have this day shipped you one car-load of window glass over the Franklin railroad, amounting to $943.85, and have drawn on you through Foltz & Son’s bank, at ten days’ sight, for the same, kindly trusting you may honor the same. We have taken great pains in selecting material. Our labor is the best that can be had, and the production of our factory is excellent. Hoping the goods just shipped to you may reach you safely in good order and give satisfaction. Please favor us with another order. Kindly trusting our business relations may prove pleasant, we are,
“Yours respectfully, John W. Knox, Treasurer.”
*293 This letter is the first communication that ever passed between the present parties. About the same time a draft drawn by the plaintiffs was presented to the defendants for the amount of $942.85, and attached to this draft was an invoice and bill of lading; and about the same time, or shortly afterward, the car-load of glass mentioned in thé letter and the bill of lading arrived in Atchison. The defendants, not understanding the matter, as they had never ordered glass from the plaintiffs, sent the following telegraphic dispatch to the plaintiffs:
“Atchison, Kas., January 15,1880 — 4 p. m.
“ John W. Knox, Treasurer Croton Glass Works, Limited, New Castle, Pa.: Is car of glass shipped us by you the same one we bought of Forbes Holton?
“(15 — Pd.) McPike & Fox.”
And in answer to this dispatch, the defendants received by telegraph the following reply:
“New Castle, Pa., January 15, 1880.
“McPike & Fox: It is Holton’s order, and same quality of glass. John W. Knox.”
There was considerable correspondence following between the plaintiffs and defendants and the defendants and Holton, which we think it is not necessary to give. The defendants were at all times willing to pay for the glass in accordance with the contract entered into between themselves and Holton; but they were not willing to pay the amount which the plaintiffs claimed they should pay. As additional facts, we might say that the evidence showed that Forbes Holton had operated the Croton Glass Works from the time of the commencement of the first correspondence between Holton and the defendant, up to July 1, 1879, when he quit operating the same and purchased other glass works in West New Castle.' The Croton Glass Works were allowed to remain idle until about December 25, 1879, when the present company, the plaintiffs in this ease, put them in operation. The present company, the Croton Glass Works, limited, was organized in-November, 1879, by Holton and the other plaintiffs in this case. After the Croton Glass Works, limited, got fully into *294 operation, and a short time before they shipped the car-load of glass concerning which this controversy arose, to the defendants, Holton showed to Knox his letter of November 3, 1879, to McPike & Fox, and also showed Knox their telegram of Noevmber 8, 1879, in reply, and told Knox that his company (and it appears he was the general manager of the company ) might fill the order. None of the other members of the company, except Holton himself, had any knowledge of the previous correspondence that had taken place between Holton and the defendants; and upon this order, or consent, or direction, of Holton’s, the company, the present plaintiffs, the Croton Glass Works, limited, sent the car-load of glass to the defendants. The plaintiffs never received any order from the defendants to furnish glass, and the two companies, the plaintiffs and the defendants, have never had any other dealings with each other; and both the plaintiffs and the defendants supposed that the plaintiffs, in furnishing the car-load of glass to the defendants, were simply filling an order made by defendants to Holton, and. fulfilling a contract previously entered into between the. defendants and Holton; and the whole difficulty that has arisen in the case, has arisen out of the fact that the plaintiffs, except Holton, did not know what the contract was between the defendants and Holton.
2. contract; not noee ' *295 3. contract price oniytobepaid. *294 Upon the foregoing facts, are the plaintiffs entitled to recover more than the contract price agreed upon between Holton and the defendants by their letters of February and March, 1879 ? The plaintiffs claim that they are. They claim that Holton, with the consent of the defendants, canceled the original contract, and that, the car-load of glass furnished in January, 1880, was furnished upon a new and independent contract made between Holton and the defendants, by virtue of Holton’s letter of November 3, 1879, and the defendants’ telegram of November 8, 1879. We think the plaintiffs are mistaken. The defendants never agreed that their original contract should be canceled, and Holton, the party who was in default — the only wrong-doer *295 in the case — had no power on his own separate volition to consummate such a cancellation. The defendants’ telegram of November 8, 1879, was, in substance and in spirit, but little more or less than were the frequent letters and telegrams that they had previously sent to Holton from May, 1879, up to November, 1879, urging him to furnish the carload of glass which they had contracted for, and which he had agreed to furnish them; and there is no good reason for understanding it in any different light than that in which he evidently must have understood-these other letters and telegrams ; and probably he did not misunderstand it. Besides, the defendants’ letter of November 12, 1879, would seem to show what was intended; and from Holton’s letter of December 30,1879, it clearly appears that Holton was not mistaken; that he understood that when he should furnish the car-load of glass that he must furnish it upon his old con-an(j ag j-]le plaintiffs furnished the glass to the defendants upon the contract of Holton, who was a member of their firm and their principal agent in the transaction, they were bound to know all that he knew with reference to the previous dealings between himself and the defendants) and they could not obtain rights as against the defendants of any higher or different character than Holton himself could if he had furnished the glass to the defendants instead of the plaintiffs. The plaintiffs simply took Holton’s place, and stand precisely where he would stand if he alone had furnished the glass.
We think the decision of the court below was correct, and its judgment must be affirmed.
All the Justices concurring.