13914 and 13983

ANDERSON *ET AL.* v. ÆTNA CASUALTY AND SURETY CO. OF HARTFORD, CONN., *ET AL.*

(178 S. E., 819)

*Messrs. Johnson & Johnson* and *Jennings L. Thompson,* for B. C. Anderson, etc., plaintiff-appellant,

*Messrs. Johnson & Johnson* and *Jennings L. Thompson,* for B. C. Anderson etc., appellant-respondent,

*Messrs. Jesse W. Boyd* and *Carlisle, Brown & Carlisle,* for respondents,

October 3, 1934. On rehearing January 22, 1935.

The opinion of the Court was delivered by MR. JUSTICE BONHAM.

It is to be regretted that some of the gentlemen of the bar in preparing appeals to this Court, are unmindful of the provisions of Rule 4 of this Court. That rule provides that: *"When it is necessary* to print the testimony, or any part thereof, the same shall be printed in question and answer form, etc. ' * * * *Only the necessary and pertinent testimony to which one or more exceptions relate shall be printed,"* etc. (Italics added.)

Some attorneys seem to think the rule gives them authority to print all of the testimony whether or not it is pertinent to the issues submitted to this Court for determination. This entails on the Court an unnecessary burden of reading the irrelevant testimony and weeding therefrom that which is of value in the decision of the issues.

The transcript of record in this case is a formidable document of 384 pages. It contains pages of testimony which are but repetitions of questions many times asked and answered, and pages of documents and figures through which the Court must go to find the relevant testimony.

We bring this matter in all kindness of spirit to the attention of the members of the bar, since by a proper preparation of their transcripts of record they may save the Court much unnecessary labor.

From the statement in the record we condense this statement of the litigation:

Plaintiff brings the action to recover the sum of $24,-091.89, and interest, the cause of the action being alleged

breaches of the conditions of a bond in the penal sum of $30,000.00, given by W. O. Hines as receiver of the closed Bank of Chesnee, with Ætna Casualty & Surety Company as surety. The sum thus sought to be recovered was deposited by the receiver in the Chesnee branch of the Peoples State Bank of South Carolina, of which the receiver was made cashier when it was established at Chesnee, and it was in that bank when it closed, although the receiver had ceased to be cashier of that bank.

The case was tried by Judge Sease and a jury. Before the jury was drawn, counsel for defendant Ætna Casualty & Surety Company suggested to the Court that this was a suit in equity. The Court, at that time, made no ruling thereabout.

At the close of plaintiff's testimony, defendant Hines moved for nonsuit; which motion was denied. Ætna Casualty & Surety Company renewed its suggestion that the action was equitable in its nature, and asked that it be tried by the Court. No ruling was then made on this motion.

At the conclusion of all of the testimony plaintiff moved for directed verdict in its favor, which motion was refused. At the same time the defendants moved that the Court separate the equitable issues from the legal issues, and that the Court give judgment on the equitable issues in favor of defendants. This motion was refused.

Plaintiff had alleged in his complaint that the receiver had lent the sum in dispute to Peoples State Bank; at the close of all the testimony, with the consent of the Court, he amended his complaint by alleging that the receiver had deposited this sum in Peoples State Bank under the related circumstances.

The Court of its own motion submitted certain issues of fact to the jury, to wit:

Question 1. "Should W. O. Hines be charged with any part of the deposit in the Peoples State Bank?"

Question 2. "If you find he should be charged with it, what part should he be charged with?"

To the first question the jury answered: "Yes."

To the second question the jury answered: "$18,091.80. Eighteen Thousand, Ninety-one and 89/100 Dollars, at 7% from October 31, 1931, to date."

Defendants renewed the motions made at the conclusion of the testimony, and for new trial and to set aside the verdict on the grounds set out in the record.

Judge Sease thereafter filed a decree confirming the findings of the jury, and directed that judgment for plaintiff be entered against both defendants.

The complaint, in addition to the recital of its contents hereinabove set out, and the formal allegations of the venue, corporate capacity, and citizenship, alleged the appointment by the Court of W. O. Hines as receiver of the Bank of Chesnee, his acceptance, and the execution of his receivership bond in the sum of $30,000.00 with Ætna Casualty & Surety Company of Hartford, Conn., as surety. The date of the order of appointment was March 10, 1930, and the date of execution of the bond was March 19, 1930. It was further alleged that during the year 1931 W. O. Hines, as receiver of the Bank of Chesnee, came into possession of more than $25,000.00 which was available for distribution to the creditors of said bank; but that in spite of insistent and repeated requests made by plaintiff and other creditors of the bank that the receiver disburse these funds by way of dividends to the creditors entitled thereto, the receiver retained said funds for months, though they were sufficient to pay a substantial dividend to all creditors; that without obtaining the consent or approval of the Court having jurisdiction of the funds, and of his actions as receiver, he made a loan of $24,091.89 of said funds to the now defunct Peoples State Bank of South Carolina, without security, at the low rate of interest of 2 per cent. per annum; and that the loan was made by the receiver negligently, and

without the exercise of due care in examining into and ascertaining the stability and soundness of said Peoples State Bank, with the financial instability, insolvency, failure, and collapse of the institution imminent and obvious upon due investigation; that on or about January 4, 1932, the doors of the Peoples State Bank were ordered closed because of hopeless insolvency, and the entire sum of $24,091.89 lent to it by Hines, together with interest, has been lost. The alleged breaches of the receivership bond are thus set forth:

(a) That the defendant W. O. Hines has failed to well, truly, and faithfully perform, execute, and discharge all and singular the duties and obligations of the receivership of the Bank of Chesnee imposed on him by law.

(b) In that the defendant W. O. Hines has failed to truly and properly pay over to the parties entitled thereto and to correctly account for any and all moneys and collections and all other assets and properties that came into his hands and under his control by virtue of such receivership. There is the usual allegation of demand and refusal, and prayer for judgment. Attached to the complaint is a copy of the bond.

The answer of Ætna Casualty & Surety Company admits the formal allegations of the complaint; the appointment of Hines as the receiver of Chesnee Bank, and its suretyship on his bond; that Peoples State Bank was closed on or about January 4, 1932; that demand has been made on and refused by this defendant. It denies each and every other allegation of the complaint.

The answer of W. O. Hines admits the material allegations as they relate to him contained in Paragraphs 1, 2 and 3 of the complaint and so much of Paragraph 4 as alleges the execution and delivery of his receiver's bond; and he admits so much of Paragraphs 5 and 6 as alleges that during the year 1931 he collected from the assets of the Bank of Chesnee and the stockholders' liability more than $25,000.-00 which was deposited in the Chesnee branch of Peoples

State Bank; and that Peoples State Bank was closed and ceased to do business on or about January 4, 1932, at which time there was on deposit to the credit of this defendant as receiver of Chesnee State Bank the sum of $24,091.89. For further answer, this defendant alleges that from the time of his appointment as receiver of the Bank of Chesnee, March 19, 1930, he deposited the funds of his trust in the Chesnee branch of Peoples State Bank, which was a continued deposit till Peoples State Bank closed in January, 1932; and from and through which deposit account defendant marshaled the assets of the Bank of Chesnee and paid two dividends under the order of the Court, and under order of the Court made and filed in the office of the Clerk of Court a full statement of the deposits, a copy of which was furnished plaintiff through his then attorney, and which contained full information of all creditors of the bank. All of which was known or should have been known to plaintiff and his associates.

In due time the defendants made the following motions:

First. That the Court sever the equitable issues from the legal issues, and that the Court find the facts and the law relating to equitable issues.

Second. That the Court find on the issue of negligence of the receiver in favor of the defendants, there being no evidence in the case sufficient to support a reasonable inference of negligence of the receiver.

Third. That the Court in any event find that since no other depositor of the Bank of Chesnee has joined this plaintiff of record in this case, and he being the sole plaintiff of record, the plaintiff is estopped by his conduct and his own negligence from recovering in this action.

Fourth. That the Court dismiss the complaint for that the proof discloses no basis for a reasonable inference of negligence on the part of the receiver justifying the refusal to give him credit for the amount of receivership funds lost through the closing of the Peoples State Bank.

Fifth. Defendants moved to set aside the verdict on the following grounds:

(a) That the same is in effect a general verdict on the case, which could not be entered in the case until after the Court in its equitable jurisdiction had inquired into and stated the receiver's accounts.

(b) For that it appears from the verdict that it is not responsive to the issues raised by the pleadings, and the jury misconceived the issues; a finding of interest from October 1, 1931, could not be sustained in any event.

Sixth. Defendants moved for a new trial on the grounds set out in the record, which are covered by the exceptions and need not be set out here.

All of these motions were overruled, and from the decree of Judge Sease both parties appeal.

The plaintiff appeals on two exceptions, viz.:

1. That his Honor erred in refusing to direct a verdict for plaintiff for $24,091.89, with interest at 7 per cent. per annum from January 2, 1932; the error being that the evidence shows that the receiver has failed to pay over to the parties entitled thereto, and to correctly account for the said sum.

2. That the presiding Judge erred in not directing verdict for plaintiff in the sum of $24,091.89, with interest from January 2, 1932, at 7 per cent. per annum, the evidence conclusively showing that the receiver deposited this sum in the Chesnee branch of the Peoples State Bank without security and without the approval of the Court, in contravention of Section 9051, Code of Laws 1932; and by reason of the failure of Peoples State Bank the funds were lost.

The defendants appeal on twenty-eight exceptions which need not be set out here, but which will be treated under the questions suggested by defendants' counsel in their brief.

It is in order to dispose first of the questions made by defendants' exceptions. They are thus stated in their brief:

Question 1. Where, in the course of liquidating an insolvent bank, its receiver accumulates in a depository bank a deposit balance sufficient to pay a dividend *pendente lite* and the depository bank closes several months later without such dividend having been paid, is the receiver's bond liable for the amount of the dividend that could reasonably have been paid from deposit balance, in the absence of any authorization or direction from the Court for the payment of a dividend? (Exceptions 4, 5, 8, 9, 10, 11, 12, 13, and 28.)

Question 2. Was there in this case sufficient evidence to support a finding that the receiver was negligent in administering the trust? (Exceptions 1, 2, 4, 5, 11, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28.)

Question 3. Did his Honor, the trial Judge, err in admitting over defendant's objection the testimony of plaintiff's witness Julian H. Scarborough that he, as State Treasurer, would have let the receiver see certain official reports on the depository bank on file in the office of the State Treasurer if the receiver had requested to see them? (Exceptions 6 and 7.)

Question 4. Did the proof establish that plaintiff, being the sole plaintiff of record, was, in any event, estopped from recovering on the receiver's bond? (Exceptions 3 and 13.)

Question 5. Did his Honor, the trial Judge, err in not dismissing the complaint and ordering judgment for defendants? (Exceptions 1, 2, 4, 5, 27 and 28.)

Questions 1 and 2 must be considered together for the reason that in deciding the first question it is necessary to consider whether the receiver was negligent in selecting the depository bank in the first instance; whether he was negligent in retaining the funds in that bank if he had notice of its financial weakness, if it was so weak, or if he had information which would have put him on notice of such weakness, or if he negligently failed to acquire such in-

formation if it was in his power with due diligence to do so. Was he negligent in not paying out the funds as dividends? All these and kindred questions must be considered in the determination of both of these questions.

What is the duty of a receiver appointed by order of Court to liquidate the affairs of an insolvent bank?

He must at once, after qualifying and giving bond, take possession of the assets of the bank, and convert these into cash as rapidly as it can be done, and on the best terms obtainable. He is the custodian of the funds arising from the assets, and must use that care in handling them which a careful and prudent person would use in the conduct of his own business. In the present case the presiding Judge said this: "In regard to depositing funds in a bank, it has been held by some Courts that when money is in the hands of a receiver at the place of final custody, and he has no further duty in regard to it, it is already in Court, and he cannot part with his custody of it by depositing it in a bank, save at his own risk, without some order, leave or direction of the Court authorizing him to do so. In the absence of precedent in this State, the Court in this case has not seen fit to go so far as to apply this rule in the determination of this cause, but has applied the rule of ordinary care and prudence. Other authorities take the view, which is concurred in by this Court, and applied in the determination of this matter, that a receiver may deposit the funds of an estate coming into his hands in a bank of good standing and repute; and in determining the bank that degree of care and prudence is exacted which ordinarily is exercised by reasonably prudent men in the handling of their own business of like importance under similar circumstances."

In our own judgment this was a correct exposition of the law applicable to the case. Certainly defendants can have no ground for complaint. In a time of panic when banks are falling "thick as autumnal leaves that strew the

brooks in Vallambrosa," his Honor might well have applied the more drastic rule.

It may be conceded that the receiver could not have ▮▮ paid out the money in the hands as dividends without an order of Court. Was the receiver negligent in not applying for such order? He had paid two other dividends by orders of the Court, which orders he had applied for. Doubtless any one interested in the distribution of the funds in the hands of the receiver may apply for an order for the payment of a dividend, but it is common knowledge that such applications are usually made by the receiver. He must in this regard use that due diligence and care which a person of ordinary prudence and care would use in like circumstances.

"The rule laid by the Court in *Taveau v. Ball,* 1 McCord, Eq [456], 464, is, that executors, administrators and others. acting in a fiduciary character are bound to manage the funds committed to their care, with the same care and diligence that a prudent and cautious man would bestow on his own concerns; and I am not aware that the correctness of this rule has ever been called in question." Thus spoke Chancellor Johnson for the old Court of Appeals in *Bryan et al. v. Mulligan Ex'r,* 2 Hill, Eq., 361, 364.

"A receiver in caring for the property, or managing the business over which he has been appointed is bound to proceed with at least ordinary care and prudence. When he uses ordinary care and prudence, that is, the care and diligence which an ordinarily prudent man uses in handling his own estate, he has fulfilled the measure of his official duties, and is not answerable for losses which occur to the property and assets in his charge; but when he fails to exercise this degree of care and diligence he becomes answerable for his neglect or dereliction." 23 R. C. L., 81, 82.

Measured by this standard, does the record disclose facts which justify the finding of the Court and the jury that the receiver was negligent in the discharge of his duties?

It is undisputed that he had on hand of the funds of the Bank of Chesnee, of which he was receiver, the sum of about $25,000.00, which funds were on deposit in a bank in Spartanburg. The Peoples State Bank of South Carolina established a branch at Chesnee on April 20, 1930, of which W. O. Hines, receiver of the defunct Bank of Chesnee, was made cashier. He immediately transferred the aforesaid receivership funds to the Chesnee branch of the Peoples State Bank, and deposited it therein without security, at the low rate of 2 per cent. per annum on the daily balances. Hines was a stockholder in the Peoples State Bank of Chesnee. Was he influenced by these facts in removing the receivership funds of the Bank of Chesnee from the bank in Spartanburg to the Chesnee branch of the Peoples State Bank, and because of such influence was he negligent in ascertaining the financial status and reliability of the Peoples State Bank? It will not be denied, indeed, it is admitted, that Hines was a banker of several years' experience in the various branches of banking. It is not conceivable that he did not know that the Peoples State Bank of South Carolina consisted of a chain of banks, some forty-four in number, some of which were in an unsafe financial condition when their assets were bought up and the banks added to the chain. He must have known that the assets and resources of each of these banks were liable to be called for and used for the support of every other bank in the chain. Did he use due diligence and care in ascertaining the condition of these banks? Was he influenced by his interest and connection with the Chesnee branch to take chances with the receivership funds by depositing them in the Peoples State Bank? Was he so influenced in holding the funds in this bank when they could have been disbursed as dividends to those entitled to them? Was he urged to take this course? Was he justified in refusing to do so?

Before the organization of the Chesnee branch of the Peoples State Bank, in the organization of which bank

Hines was instrumental, he went to Charleston, where was situated the headquarters of the chain, to consult with headquarters officers relative to his duties. It does not appear that he then, or at any other time, made more than a superficial examination into the standing of the various banks thus united, with the safety and welfare of each one of which the bank in which he had deposited his receivership funds was irrevocably concerned in responsibility. He testifies that he saw and relied upon published statements of the condition of these banks. But he must have known that such statements were oftentimes unreliable. He testified that as an officer of the Bank of Chesnee, prior to its failure, he had included in certified statements of its assets practically $100,000.00 of papers which were nearly, if not quite, worthless. He cannot have had great faith in public statements. He testified that he was in Columbia twice after his connection with the Peoples State Bank and made no effort to see and examine the statements of the State Bank Examiner and his officers of the condition of Peoples State Bank of South Carolina, which were required to be made and filed in the office of the state treasurer. Mr. Scarborough, the then state treasurer, testified that while such reports were not open to the general public for inspection, if Mr. Hines, as receiver, had applied he would have been allowed to examine them. Such examination would have disclosed that the captial of the chain of banks was impaired; that there were excessive loans to firms and corporations in which directors and officers were interested, and additional excessive loans to directors, local managers, and officers direct; that there were heavy indirect liabilities of directors and local managers and officers; that there were over five millions of dollars of slow assets, which did not include the amount invested in "banking houses" and "furniture and fixtures" which amounted to nearly one and a half millions of dollars. He would have ascertained by such examination that the report of the examiners contained the insistent re-

commendation that the general board restore the capital and adopt a drastic policy in liquifying the assets. The information which such examination would have disclosed, even if obtained after deposit was made in the Peoples State Bank, must have suggested to a person of ordinary care and prudence that the deposit be withdrawn from the bank.

It is in evidence that the Chesnee branch of the Peoples State Bank was established in the banking house of the defunct bank of Chesnee, which was in the custody of the receiver Hines, and that he had his offices there. In the banking house were two safes, in one of which Peoples State Bank kept its cash, books, assets, etc. There is evidence that the receiver was warned that Peoples State Bank was unsound and that he had better put the receivership money in the other safe, the use of which he had reserved. There is also evidence that he was urged to pay out the receivership funds by way of dividends. He did neither of these things, and when the Peoples State Bank closed its doors January 2, 1932, the funds of the receiver were still in its custody, or perhaps it is more accurate to say they were lost.

The receiver urges as a reason for not paying out the funds as dividends that there were debts against the Bank of Chesnee which claimed a preference which were unsettled. Before the closing of the Peoples State Bank in January, all of these claims for preference had been judicially determined (in August, 1931) and preferences denied. Notice of intention to appeal from the decree determining the question of preference was given on behalf of claims which amounted in the aggregate to $6,100.00. There was left in the hands of the receiver about $18,091.89, which between the 26th of August, 1931, and January 2, 1932, could have been disbursed in dividends; but the receiver made no move to disburse them. It may be stated that the appeal above noticed has been abandoned.

Mr. Hopkins, a witness for the defendants, stated on cross examination that he was district cashier of the Peoples

State Bank at Chesnee. That the State bank examiner reported a deficit in that bank of $1,464.84 on November 17, 1931; and said further: "This bank's general condition does not improve by showing deficit and impairment of capital; cannot operate properly until confidence is restored."

Mr. Hines' office was in the same building with the bank, which building he rented to the bank. He reserved the use of a safe in the bank. He was still a stockholder in it and had a large deposit of fiduciary funds. It strains credulity to suggest that he had no inkling of the affairs of the bank in time to withdraw the receivership funds before the crash of the bank.

In the light of these facts can it be said that there was no evidence of negligence on the part of the receiver?

"This Court not only has often said that an adjudication of a receivership is a harsh and drastic remedy, one to be granted only with great caution [citing authorities], but it has also, time after time, indicated that the receiver appointed should be untrammelled in his relations, entirely indifferent between the parties, and absolutely fair and impartial, for the receiver not only represents all the parties interested * * * but he is an officer of the Court." *Penn Mutual Ins. Co. et al. v. Cudd et al.,* 172 S. C., 88, 172 S. E., 787, 788.

The force of this rule is explained by Burns when he said:

"But och! Mankind is unco weak
"And little to be trusted,
"When self the wavering balance shakes
"'Tis rarely right adjusted."

"The assets of an insolvent bank are a trust fund in the hands of the receiver, to be reduced to money and ratably distributed among all the creditors." *Peurifoy v. Gamble,* 145 S. C., 1, 142 S. E., 788, 789, 71 A. L. R., 783, citing *Livingstain v. Columbia Banking & Trust Co.,* 77 S. C., 305, 57 S. E., 182, 22 L. R. A. (N. S.), 442, 122 Am. St. Rep., 568.

It follows that such funds cannot be used for any other purpose even with honest intent. And it may be said just here that no dishonest intent is charged to the receiver in this case; only negligence.

"A receiver of an insolvent corporation is an officer appointed by the Court to preserve the property in litigation, together with the profits thereon, and to apply them at the direction of the Court. He represents, not only the corporation, but also its stockholders and creditors, and it is his duty to assert and protect the rights of each of these persons." *In re American Slicing Mach. Co.,* 125 S. C., 214, 118 S. E., 303.

The duty of a receiver anent the depositing of fiduciary funds is thus stated in 53 Corpus Juris, 156: "In the absence of statute or order of Court, or a settled practice to the contrary, a receiver is under no specific duty to deposit or keep trust funds coming into his hands in a bank. * * * Thus it has been held that, since a general deposit in a bank is a species of loan, a receiver who has a fund in his possession merely awaiting the termination of the receivership cannot part with its actual custody by depositing it in a bank, or otherwise, save at his own risk, without some order, leave or direction of the Court."

It is accepted as a rule in this jurisdiction that a receiver may put his receivership funds in a bank of good repute and standing, without incurring liability for its loss by failure of the bank, if he exercises due care and prudence in ascertaining the financial safety of the bank. It is always a question of fact for the jury to determine whether such due diligence and care have been used.

In this case did Mr. Hines, the receiver, deposit the funds in his hands, as such receiver, in the Peoples State Bank with the intent of leaving them there, upon which to earn interest? If he did, was the deposit in the nature of an investment? If so, and these were facts to be determined by the Court and jury, then the deposit was irregular and in

contravention of his duty as receiver, and of the provisions of Section 9051, Code of Laws of South Carolina 1932.

Defendants insist that this was not an investment, but a temporary deposit. Yet it appears that it was an interest-bearing deposit, and that the receiver could not withdraw it when urged to distribute it in dividends.

In the case of *In re Willcox* (*Ellis' Estate v. Brown*), 162 S. C., 133, 160 S. E., 260, this Court laid down the rule that a trustee must follow the provisions of the statute and procure the written approval of the Probate Judge for the deposit of the trust funds in a bank, or else in case of loss by failure of the bank, the trustee and his surety would be liable. In that special case they were exonerated because. the guardian made constant reports to the Judge of Probate who approved the actions of the guardian.

Again construing this section of the Code in *Oakes' Estate v. Oakes*, 170 S. C., 167, 169 S. E., 890, this Court held: "Committee held liable for losses to incompetent's estate from depository bank's insolvency to extent of deposits made before securing approval of Judge of Probate."

Our conclusion, after all is said, is that the facts disclosed by the record made it a question for the Court and jury to determine whether the receiver in this case has exercised that degree of care and prudence in the management of the receivership funds which is required by law, to wit, the care, prudence, and diligence which a person of ordinary care, prudence, and diligence would exercise in his own business. The Court and jury have found that he did not exercise that degree of care and prudence, and we see no reason to disturb the finding.

Question 3 challenges the ruling of the Court in admitting the testimony of plaintiff's witness Julian H. Scarborough, then the State Treasurer, and in whose custody the reports of the State Bank Examiner are placed by law, to testify that he would have allowed the receiver to see

certain of these reports on file in his office if the receiver had asked to see them. (Exceptions 6 and 7.)

It is urged that the answer as to what he would have done is speculative; we do not think so. The answer is positive. It is immaterial what was the ruling of the Attorney General; if the receiver had applied for leave to see these records, he would have been permitted to do so.

We see no merit in this question. Moreover, it is doubtful if timely objection was made to the question.

Question 4. Did the proof establish that plaintiff, being the sole plaintiff of record, was, in any event, estopped from recovering on the receiver's bond? (Exceptions 3 and 4.)

It does not. If plaintiff was the sole plaintiff, which is not the case, there is nothing in the record to show that he is estopped from recovering on the receiver's bond.

Question 5. Did his Honor, the trial Judge, err in not dismissing the complaint and ordering judgment for defendants? (Exceptions 1, 2, 4, 5, 27, 28.)

The contentions under this head are that this was a suit in equity, and that it could not be maintained against the receiver and his surety until there had been an accounting by the receiver and a devastavit established. This is an action to recover a definite sum of money for breach of the conditions of a bond. A bond is an obligation—a contract. If it provides for the payment of money in certain circumstances, and the obligor fails to pay it as by the terms of the bond, an action for its recovery is an action at law on a money demand.

"A bond is nothing more than an agreement or contract under seal to pay money, 'or to do some other thing.'" *Duncan v. City of Charleston,* 60 S. C., 532-555, 39 S. E., 265, 272.

"The action upon the bond was an action at law." *Beatty v. National Surety Co.,* 132 S. C., 45, 128 S. E., 40. 42.

"Sureties upon the bond of a receiver do not become parties to the suit, or officers of the Court by reason thereof; but their liability, if any, arises solely out of their undertaking as sureties on the bond, and can ordinarily only be ascertained in a common law Court by an independent action in which they have a right of trial by jury." 53 C. J., 414.

"The question whether the receiver acted with ordinary care in respect of particular matters complained of is for the jury." 53 C. J., 418.

"The foundation of an action at law on the bond of an administrator, is the bond itself, and not a decree of the ordinary; for breach of any one of the covenants an action lies." *Wiley, Ordinary, v. Johnsey,* 6 Rich., 355.

"Persons sustaining injury by a breach of the bond are allowed to submit the condition to a jury, and recover such damages as the evidence may warrant. The liability of the obligors can be ascertained only by reference to the condition, which prescribes the duties of the administrator, the non-performance of which gives the right of action against him and his sureties." *Id.*

In an especially well-considered opinion, Mr. Justice Marion discussed and determined the question whether in order to sustain an action against a fiduciary who has the custody of trust funds it is necessary that there be an accounting by the trustee and proof of a devastavit. He reviewed the cases which maintained that rule under the old practice as it prevailed before the Constitution of 1868. Before the adoption of that Constitution the Courts of law and equity moved in different orbits. The opinion states:

"Under those conditions, since the action upon the bond was an action at law, predicated upon a breach of the bond, and since the fact of the breach could only be judicially ascertained by an inquiry in a tribunal other than the Court of law, the rule requiring a judicial determination in such separate forum as the basis for the assignment of the breach

of the bond in the Court of law was a necessary and logical sequence.

"But the jurisdiction of the Courts of equity was by the Constitution of 1868 vested in the Court of Common Pleas (Article 4, § 16). *Jordan v. Moses,* 10 S. C., 431. And shortly thereafter (1870) the adoption of the Code of Civil Procedure 'substituted a totally different system of pleading,' abolishing 'the distinction between actions at law and proceedings in equity,' and thereby enabled a defendant to 'plead equitable as well as legal defenses to the same action.' *Lowry v. Jackson,* 27 S. C., 318, 3 S. E., 473. * * *

"If, therefore, under our present practice, in an action upon the administration bond there are available to the defendants all the defenses which under the old practice could only be interposed and established in a suit or proceeding in the Court of equity or in the Court of ordinary, it would seem clear that the fundamental reason for the rule requiring the decree of one or the other of those Courts, rendered in such separate suit or proceeding, as a condition precedent to the maintenance of the action at law upon the bond, no longer obtains."

After discussing the question further, the opinion concludes in these words: "If, as follows from the foregoing views, an action upon an administration bond may now be maintained without first obtaining a judgment or decree establishing a devastavit or breach of the bond in a separate suit or proceeding against the administrator, the complaint in such an action may not, of course, be held demurrable because of a failure to allege that such judgment or decree has been obtained. *The test of its sufficiency is, does it allege facts which tend directly to establish the breach of the condition of the bond relied upon to sustain the action, or facts from which such breach may be fairly inferred? If it does, then the administrator or his surety may meet the issue thus raised by interposing any defense which would have*

*been available in any prior suit or proceeding in the Court of probate or in the Court of Common Pleas."* (Italics added.)

The above excerpts were taken from Mr. Justice Marion's opinion in the case of *Beatty v. National Surety Co.,* 132 S. C., 45, 128 S. E., 40, 43.

It is plain that the cause was not one triable only by the Court, and the presiding Judge did not err in so holding, and did not err in refusing to dismiss the complaint.

"A disputed money demand [is] triable by jury on the law side." *Georgia Carolina Gravel Co. v. Blassingame,* 129 S. C., 18, 123 S. E., 324, 326.

The defendants are not in position to complain in this case. The trial Judge impaneled a jury of his own motion to answer certain questions, but his decree finally disposed of the case as one in equity, as defendants argued.

"The procedure followed by the trial Judge in impaneling a jury to try what then appeared to be a legal issue, reserving the equitable issues for trial by the Court, was in accordance with the contention of the appellants to have the equitable issues tried unmixed with legal issues. That the Court had the authority, without the consent of the parties and on his own motion, to frame issues is a well-established principle of law. *Mitchell v. Hamilton,* 98 S. C., 289, 82 S. E., 425; *Brownlee v. Martin,* 21 S. C., 392; *Flinn & Hart v. Brown,* 6 S. C., 209.

"And further, it does not appear that the appellants should be heard to complain as the case was finally disposed of as one of purely equitable cognizance, as was contended for by them in the first instance. There was no error on the part of the Circuit Judge." *Whetstone v. Dreher,* 138 S. C., 169, 136 S. E., 209, 214.

Defendants contend that this is a proceeding wholly equitable in its nature, and that under the rule adopted by this Court in sundry cases that where the findings of fact are concurred in by the circuit Judge this

Court may review the findings to ascertain if the findings are against the clear preponderance of the evidence. *Fant v. Easley Loan & Trust Co.,* 170 S. C., 61, 169 S. E., 659; *Wilson v. Muehlberger,* 165 S. C., 137, 163 S. E., 125.

The rule is correctly quoted, but it is also a provision of that rule that it is incumbent on the appellant to satisfy this Court that the circuit Judge has erred in his conclusions. This the defendants-appellants have failed to do, except as to their contention that if the jury found that the receiver was liable because of negligence, they were bound to find a verdict for the whole amount sued for, viz., $24,091.89, instead of the sum of $18,091.89; and also except as to the finding of interest from October 31, 1931, instead of from January 2, 1932, when the bank closed its doors. We think both of these contentions are correct, but this conclusion does not call for an order of new trial. The judgment may be corrected by this Court.

The exceptions of the plaintiff raise the single question that it was error for the jury not to find the whole amount sued for.

We are met by this dilemma: We have found that this is an action at law and it is the rule of law that in such an action where the circuit Judge concurs in the findings of fact this Court may not review them. *Middleton v. Levi,* 106 S. C., 32, 90 S. E., 325.

However, in the case of *Willard et al. v. Finch et al.,* 123 S. C., 56, 116 S. E., 96, this Court said:

"The issue was passed upon by the master, who found as a fact that Hodges did not have such actual notice. That finding was approved and affirmed by the Circuit Judge, Hon. T. S. Sease, and the appeal is from his decree.

"A proceeding for the enforcement of a statutory lien is essentially legal in its nature, * * * and a finding of fact by the Circuit Court upon the issue here involved is not reviewable in this Court, unless wholly unsupported by evi-

dence, *or unless it clearly appears that such finding was influenced or controlled by error of law."* (Italics added.)

Citing *Sawyer v. Mabus,* 107 S. C., 369, 92 S. E., 1029; *Stack v. Haigler,* 90 S. C., 319, 73 S. E., 354; *Kershaw v. Burns,* 91 S. C., 129, 74 S. E., 378.

It was in evidence that the appeal touching the claims which amounted in the aggregate to $6,000.00, and which it was sough to show were entitled to a preference, had been abandoned at the time of the trial, and there was then no legal ground upoh which that sum could be deducted from the full amount in the hands of the receiver. If the plaintiff was entitled to recover, he was, as a matter of law, entitled to recover the whole amount sued for.

The finding that interest should begin to run from October 31, 1931, is wholly unsupported by any evidence. It began to run from January 2, 1932, the date when the bank closed its doors.

The judgment appealed from is affirmed, except as hereinabove modified, and the case is remanded to the Circuit Court, with directions to enter judgment for the plaintiff for the sum of $24,091.89, with interest from January 2, 1932, at the rate of 7 per cent. per annum.

MR. CHIEF JUSTICE BLEASE, MESSRS. JUSTICES STABLER and CARTER and MR. ACTING ASSOCIATE JUSTICE W. C. COTHRAN concur.

### ON REHEARING

MR. ACTING ASSOCIATE JUSTICE RAMAGE.

This was a rehearing in the above case, ordered by the Court.

The petition for rehearing, among other things, challenges the right of this Court to increase the amount of the verdict found by the jury. It is due to the writer of the original opinion to say that he was led by the brief of the appellants' attorneys to understand that if the judgment was affirmed the plaintiff was entitled to recover all that he asked for, to

wit, $24,091.89, instead of the $18,091.89, found by the jury. It is alleged now, by the petition for rehearing, that the position of appellents' attorneys thereabout has been misunderstood, and they now deny the power of this Court to increase the amount of the verdict. It seemed advisable to the Court, in the circumstances, to grant the petition for a rehearing for the purpose of arguing this question alone, and it was so ordered. The Court being entirely satisfied with the opinion of the Court in relation to the other issues made by the appeal, the rehearing is limited to the one question, namely, the power of the Court to increase the verdict.

The issues on rehearing have been narrowed down to the one question of the power of the Supreme Court to increase the verdict of the jury.

Party seeking an amendment of a verdict must lay ■ a proper foundation by motion for new trial. *Middleton & Co. v. A. C. L. R. Co.,* 133 S. C., 23, 130 S. E., 552, 556; *Levi v. Legg,* 23 S. C., 282.

"Where in a law case the verdict * * * is for an amount greater than the defendant conceives it should have been, his remedy is to move for a new trial, and upon that motion the Circuit Judge may either order a new trial out and out, or order a new trial *nisi,* requiring the plaintiff at his option to remit a certain portion of the verdict or submit to a new trial. Should the Circuit Judge refuse the motion, upon a legal ground, the defendant has his remedy by appeal to this Court, which may either affirm or reverse the order below. In the event of affirmance, the case is ended; in the event of reversal, the Court may remand the case, either directing a new trial or a new trial *nisi.* So where the verdict is for an amount less than the plaintiff conceives it should have been, the remedy of the plaintiff is exactly the same. * * *

" 'Where the objection that the recovery is inadequate is not raised in a motion for a new trial, it is waived and cannot be urged on appeal, and this is true although an exception

is taken to the instructions on the measure of damages * * *' 29 Cyc., 751." *Middleton & Co. .v. A. C. L. R. Co., supra.*

"If there was any error on the part of the jury in this respect, the proper mode of correcting it would have been by a motion, addressed to the Circuit Court, for a new trial." *Levi v. Legg, supra.*

Although the Court may amend a verdict, the amendment must be accompanied with an option of a new trial *nisi* to the party against whom amendment militates. *Joiner v. BeVier,* 155 S. C., 340, 152 S. E., 652; *Lorick & Lowrance, Inc., v. Julius H. Walker & Co.,* 153 S. C., 309, 150 S. E., 789, 792; *Middleton & Co. v. A. C. L. Ry. Co., supra; Gwathmey v. Foor Hotel Co.,* 121 S. C., 237, 113 S. E., 688, 689; *Hall v. Northwestern Railroad Co.,* 81 S. C., 522, 62 S. E., 848, 853; *Levi v. Legg, supra, Warren v. Lagrone,* 12 S. C., 45, 51; 27 Ruling Case Law, 877 878.

"The Judge cannot, under the power of amending the verdict, invade the province of the jury or substitute his verdict for theirs." *Lorick & Lowrance, Inc., v. Julius H. Walker & Co., supra.*

"This Court has no power to readjust a verdict in a law case except in the manner indicated, and that is only through its power to order a new trial conditioned upon the refusal of the terms imposed. It grants a new trial *nisi* in favor of the defendant, unless the plaintiff should reduce the verdict, for the reason that it has no absolute control over the verdict; it cannot readjust it against the will of the plaintiff by reducing it. If it cannot reduce the verdict, it seems clear that it cannot increase it upon the plaintiffs' motion, except indirectly in the manner stated * * * through the indirect method of a new trial *nisi*." *Middleton Co. v. A. C. L. R. Co., supra.*

"The authority of a Circuit Judge to correct, modify, or interfere with the verdict of a jury in a case properly triable

by jury is embraced in and limited to the power to grant new trials." *Gwathmey v. Foor Hotel Co., supra.*

"The Court in imposing conditions" will carefully preserve "the legal rights of the parties." *Id.*

"The Court may grant or refuse a new trial, or, in a proper case, may grant a new trial *nisi;* but should do one thing or the other." Quoted from *Schultz v. C. M. & St. P. R. Co.,* 48 Wis., 375, 4 N. W., 399, in *Hall v. Northwestern Railroad Co., supra.*

For the Court to amend a verdict in a law case without an accompanying option of a new trial *nisi* to the party against whom the amendment operates adversely amounts to an invasion of the province of the jury. *Joiner v. BeVier, supra; Lorick & Lowrance, Inc., v. Julius H. Walker & Co., supra; Sanders v. Commonwealth Life Ins. Co.,* 134 S. C., 435, 132 S. E., 828, 830; *Middleton & Co. v. Railway Co., supra; Gwathmey v. Foor Hotel Co., supra; Schein v. Epstein,* 110 S. C., 433, 96 S. E., 905; *Levi v. Legg, supra; Hosford v. Wynn,* 22 S. C., 309; *Smith v. Grant,* 15 S. C., 136; *Carwile v. Harvey,* 15 Rich. (49 S. S. L.), 314; *Duff v. Hutson,* 2 Bailey (18 S. C. L.), 215.

"The Judge cannot, under the power of amending the verdict, invade the province of the jury or substitute his verdict for theirs." *Lorick & Lowrance, Inc., v. Julius H. Walker & Co., supra.*

"The law rather forbids this Court assuming to take upon itself the powers, duties, rights and privileges of a jury." *Sanders v. Commonwealth Life Ins. Co., supra.*

"To sustain the plaintiffs' appeal and send the case back to the Circuit Court, with directions to include in the judgment what the plaintiffs may be entitled to, would amount to an increase of the verdict," which the Court cannot do except "indirectly in the manner stated," *i. e.,* with the accompanying option of a new trial *nisi. Middleton & Co. v. Railway Co., supra.*

"Obviously, the absolute power to change or modify the findings of a jury upon an issue of fact properly submitted to them would, when exercised, amount to the substitution of the trial Judge's findings for the verdict of the jury and to the abrogation in such cases of the right of trial by jury. * * *" *Gwathmey v. Foor Hotel Co., supra.*

"The action was an action at law, and the Judge had no right to give a judgment contrary to the finding of the jury." *Schein v. Epstein, supra.*

The appellate Court "can only affirm or reverse and remand for a new trial, if necessary." *Hosford v. Wynn, supra.*

"The appeal Court in a law case * * * has no right to order an original judgment for plaintiff." *Smith v. Grant, supra.*

"Where in a suit on a bond, the jury brought in a verdict of one-fourth of the principal and interest due on the bond, a new trial was ordered." *Carwile v. Harvey, supra.*

"In the organization of our Courts of law, the power to ascertain the amount of damages has been confided to the jury, and it has become almost proverbial, that on this subject the verdict is conclusive." *Duff v. Hutson, supra.*

The trial Judge in the case has the right to set aside entirely any verdict rendered by the jury, and to order a new trial on any of the usual and recognized grounds. He has the power, also, to order a new trial *nisi.* It was within his province to grant the plaintiff a new trial conditioned upon the refusal of the defendants to remit from the verdict all, or parts, of the damages found in their favor, but none of these powers he exercised. *Joiner v. BeVier, supra.*

A jury's verdict should be upheld when possible to do so and to carry into effect what was clearly jury's intentions. But when the verdict is so confused that it is not absolutely clear what was intended, the Court should

order a new trial. *Lorick & Lowrance, Inc., v. Walker & Co., supra.*

> "A verdict should be certain and impart a definite meaning, free from ambiguity." *Id.*

> "A trial Judge's power to make or order correction of a verdict in civil cases after discharge of jury, for purpose of giving effect to what the jury unmistakably found, is limited strictly to cases where the jury has express its finding informally, and the Judge cannot invade the jury's province or substitute his verdict for that of the jury under the guise of amending the verdict." *Id.*

"A trial Judge in claim and delivery suit could set aside verdict and award a new trial, order a new trial *nisi,* on refusal to remit damages." *Joiner v. BeVier, supra.*

"The verdict, originally returned, contained a special finding that plaintiff was guilty of actionable fraud to defendant's damage in the sum of $5,000.00, but omitted to assess damages for right of possession of property; on the paper was also an item marked total $5,500.00. This verdict was returned to the jury to make it less ambiguous as to amount of damages and their intent, and they returned a verdict that defendant should recover possession of property, the value of which was $5,500.00, together with $5,500.00 damages for wrongful taking and retention thereof by plaintiff. The verdict left it doubtful what damages were awarded for the taking and detention, if any." *Id.*

The authority of a Circuit Judge to correct, modify, or interfere with the verdict of a jury in a case properly triable by a jury is embraced in, and limited to, the power to grant new trials. Civ. Code, 1912, § 3831; Code Civ. Proc., 1912, § 324 (now Code 1932, §§ 34, 605). Obviously, the absolute power to change or modify the findings of a jury upon an issue of fact properly submitted to them would, when exercised, amount to a substitution of the trial Judge's findings for the verdict of the jury and to the abrogation in such

cases of the right of trial by jury. There being no question as to the legal right of the plaintiff in her action of tort for unliquidated damages to have the amount of damages determined by a jury, the order of the Circuit Judge must be adjudged erroneous in so far as it rendered the amount of the verdict without allowing the plaintiff the option of a new trial *nisi*." *Id.*

"It is well settled that this Court has no power to review or correct the findings of ·fact in a trial by jury. Const., Art. 4, § 4. But it is provided that 'the Judge who tries the cause may, in his discretion, entertain a motion to be made on his minutes to set aside a verdict and grant a new trial upon exceptions, or for insufficient evidence, or for excessive damages.' Gen. Stat., 636, § 288; vide, also, Act of 1868, Gen. Stat., 497, § 4. From the decision of the Circuit Judge on such motion, based upon error in fact, as for insufficient evidence or for excessive damages, there is no appeal. The Circuit Court, therefore, in such respect, is a Court of final resort, and except where especially directed by constitution or statutory provisions, is to be governed in its proceedings, by the principles of law and the rules of practice which were of force and applicable to Courts in the exercise of similar power prior to the adoption of the constitution in 1868." *Warren v. Lagrone, supra.*

"The sixth ground alleges error, because the jury, by their verdict, allowed interest on the value of the cotton. This ground should properly have been presented on a motion addressed to the ·Circuit Judge for a new trial, for it does not appear that there was any request for any instruction to the jury upon this point, or that any instruction was given." *Wilson v. Atlanta & C. Airline Ry. Co.,* 16 S. C., 587, 592.

In *James v. Morey,* 44 Ill., 352, it is held: Where a verdict for plaintiff is for too small a sum and he moves for a new trial on that ground, it is not error for the Court to announce that it will grant the motion, unless defendant consents to a certain increase of the amount of the verdict.

In *West v. Milwaukee, L. S. & W. Ry. Co.,* 56 Wis., 318, 14 N. W., 292, the plaintiff appealed upon the ground that he had not been allowed interest upon the amount found due to him by the verdict. The Court held that he was entitled to interest, and assimilating the situation to that of the defendant moving for a new trial upon the ground that the verdict was excessive, ordered a new trial, unless the defendant would stipulate within a certain time that the verdict be increased to the extent of such interest, showing that the Court had no more power to increase a verdict than to reduce it, except through the indirect method of a new trial *nisi.*

In *Aultman v. Thompson* (C. C.), 19 F., 490, upon a motion for a new trial, the Court held that the plaintiff was entitled to more than the amount of the verdict by a certain amount, and granted the plaintiff's motion *nisi,* requiring the defendant to consent that judgment for the excluded sum be entered against him or submit to a new trial, enforcing the same rule as is applied where the defendant moves for a new trial upon the ground of an excessive verdict.

In *Goscainzki v. Carlson,* 157 Wis., 551, 147 N. W., 1018, the plaintiff in an assault and battery civil case had a verdict for $70.00 damages; he moved for a new trial upon the ground that the damages allowed were inadequate. The trial Judge granted his motion, unless the defendant would within a fixed time file a consent that judgment be entered against him for $250.00. The defendant appealed. The Court held that the order was proper.

In *Ford v. R. Co.,* 98 Minn., 96, 107 N. W., 817, 8 Ann. Cas., 902, the plaintiff had a verdict of $1.00 in an action for damages on account of an assault and battery by an employee of the defendant. Upon his motion for a new trial, the Court ordered a new trial unless the defendant within a fixed time would consent in writing that the verdict be increased to $150.00. Upon appeal by the defendant, the Court held that the order was entirely right.

"But the Court may require a defendant to consent to an increase in the amount of the judgment to the amount indisputably due, on pain of granting plaintiff's motion for a new trial." 38 Cyc., 1899.

In *Smith v. Ellyson,* 137 Iowa, 391, 115 N. W., 40, it is held that, upon plaintiff's motion for a new trial, it could be granted upon condition that the defendant refused to make a certain modification of the verdict.

In *Reuter v. Hickman, Lauson & Diener Co.,* 160 Wis., 284, 151 N. W., 795, Ann. Cas., 1916-B, 455, it is held that in granting a new trial for inadequacy of damages, whether the defendant should be given the option to allow judgment for a larger sum, was within the discretion of the trial Court.

In *Gaffney v. Illingsworth,* 90 N. J. Law, 490, 101 A., 243, the Court said: "When a new trial is granted because the damages are inadequate, the Court may impose * * * terms to the effect that, if the defeated party will pay a certain sum greater than that awarded by the verdict, the rule will be discharged."

In *Marsh v. Minneapolis Brewing Co.,* 92 Minn., 182, 99 N. W., 630, the Court held that on a motion for a new trial the Court had the right to grant the order *nisi,* requiring the defendant to consent to an increase of the verdict in a damage suit from $50.00 to $175.00, or submit to a new trial.

In *Schein v. Epstein, supra,* the Court said: "The action was an action at law, and the judge had no right to give a judgment contrary to the finding of the jury. The decree practically sets aside the verdict of the jury, and that much his Honor had the right to do."

In *Gwathmey v. Foor Hotel Co.,* 121 S. C., 237, 113 S. E., 688, upon the defendant's motion for a new trial, the Circuit Judge passed an order directing that the verdict for punitive damages be reduced to $500.00, and refusing the motion. The Court held that this was error, in that the

plaintiff was not allowed the option of remitting that amount or of submitting to a new trial. The Court adopts the reasoning of the Court in the *Gwathmey case,* and also the excellent opinion of Mr. Justice Cothran in *Middleton & Co. v. A. C. L. R. Co., supra,* from which much of the above has been copied.

In Iowa, where plaintiff on appeal contends that he should have an increase in the amount found for him, the Courts hold that the Supreme Court on appeal, only reverse the judgment and order a new trial, and if he does not consent to this, no other relief can be granted to him. *Minthorn v. Hemphill,* 73 Iowa, 257, 34 N. W., 844.

In Kansas, the Supreme Court will not increase the amount of a judgment of the district Court, without any finding of Court, jury, or referee authorizing the same. *Holton v. McPike,* 27 Kan., 286.

Where damages for a tort have been assessed by a jury at one entire sum, the Court, upon a motion for a new trial, cannot, according to its own estimate of the amount of damages, which the plaintiff ought to have recovered, enter an absolute judgment for any other sum than that assessed by the jury. *Kennon v. Gilmer,* 131 U. S., 22, 9 S. Ct., 696, 33 L. Ed., 110.

Court on appeal may either (1) deny the motion, or (2) grant a new trial, or (3) order that a new trial be had, unless the plaintiff elects to remit a certain part of the verdict.

"But the Court has no authority to pass upon any question of fact involved in the consideration of the motion for a new trial. And, in a case in which damages for a tort have been assessed by a jury at an entire sum, no Court of law upon a motion for a new trial for excessive damages for the insufficiency of the evidence to support the verdict, is authorized, according to its own estimate of the amount of damages which the plaintiff ought to have recovered to

enter an absolute judgment for any other sum than that assessed by the jury." *Id.*

It seems from the best investigation that this Court can make as to the rule in other states, that in Louisiana, Georgia, Massachusetts, New York, Alabama, Texas, and ·some other states, the matter of the highest Court in the state increasing the amount of a verdict is regulated by a statutory provision, and, of course, the cases from such state could not be of any benefit here. We do not think the following cases should have any application to the case at bar : *Cook & Laurie Contracting Co. v. Bell,* 177 Ala., 618, 59 So., 273; *Minn. Mut. Life Ins. Co. v. Welsh,* 131 Ill. App., 103; *Minn. Mut. Life Ins. Co. v. Link,* 230 Ill., 273, 82 N. E., 637; *Jackson v. City of Brockton,* 182 Mass., 26, 64 N. E., 418, 94 Am. St. Rep., 635; *Gilman v. Gilman,* 53 Me., 184; *Richardson v. Ins. Co.,* 47 N. Y. Super. Ct., 138; *Wortham v. Harrison,* 8 Tex., 141; *Bush v. Hall,* 95 N. C., 82; *Brooks v. Brooks,* 12 S. C., 422; *Pridgen v. Bonner,* 28 Tex., 800; *Broocks v. Masterson* (Tex. Civ. App.), 82 S. W., 822; *McNairy v. Castleberry,* 6 Tex., 286; *Thomson v. Bishop,* 29 Tex., 154; *Russell v. Miller,* 40 Tex., 494; *Morrison v. Dibrell,* 22 Tex., 199; *East Tenn. V. & G. Ry. Co. v. Burnett's Ex'rs,* 11 Lea (Tenn.), 525; *Graham v. Marshall,* 52 Pa., 2 P. F. Smith), 28; *Spence v. Damrow,* 32 Neb., 112, 48 N. W., 880; *American-Hawaiian Engineering & Const. Co. v. Butler,* 17 Cal. App., 764, 121 P., 709; *Berthold v. Gruner,* 12 Mo. App., 575. And all other cases cited in 4 Corpus Juris, page 1160, § 3171, as authority for the appellate Courts to increase the amount of a verdict, do not apply and are not binding on us.

The same remark applies to Section 234 on page 280 of Volume 2 of Ruling Case Law.

We have also considered the cases cited in §§ 4498 *et seq.,* columns 2513 *et seq.* of Vol. 3 of Century Digest (Appeal and Error).

Also, Key 1151 of the First, Second, and Third Decennial Digests, all published by the West Publishing Company, Appeal and Error.

We do not find the weight of authority against the views herein expressed.

The following additional cases hold that an amount may not be increased by the appellate Court: *Kingsley v. City of Brooklyn,* 5 Abb. N. C. (N. Y.), 1; *McHugh v. New York El. R. Co.,* 65 Hun., 619, 19 N. Y. S., 744; *Newhall v. Wyatt,* 68 Hun., 1, 22 N. Y. S., 828; *Moffet v. Sackett,* 18 N. Y., 522.

We find the following section (Section 593) in the Code 1932 (after omitting first part):

"Framing of Issues.—In all equity causes now pending or hereafter instituted in the Courts of Common Pleas of this State, the presiding Judge may, in his discretion, cause to be framed an issue or issues of fact, to be tried by a jury.    *    *    *

"Force of Verdict.—*    *    *    The findings of fact upon such issues by the jury shall be conclusive of the same: Provided, That the presiding Judge may grant new trials therein, according to the practice in other jury trials; And provided, further, That exceptions to the rulings of the presiding Judge upon such trials may be taken by either party, and such rulings may be reviewed by the Supreme Court upon appeal from the final judgment."

The jury and Judge Sease may have found in the testimony of T. B. Butler and other testimony along the same line about an appeal at one time pending sufficient to make the verdict and amount found by the lower Court what it was, rather than the amount contended for by the plaintiff.

Under the law, as above cited, and under the facts as developed in this case, we find that the Court has no power to increase the amount found by the lower Court.

Therefore, the opinion heretofore filed in this case is amended by striking therefrom all those parts which hold

that this Court had the power to increase the amount of the verdict found by the jury; as thus amended that opinion is made the judgment of this Court.

MESSRS. JUSTICES STABLER, CARTER, and BONHAM and MR. ACTING ASSOCIATE JUSTICE J. HENRY JOHNSON concur.